Philip A. Goldstein, Esq.
Katherine Garland (*pro hac vice application forthcoming*)
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Telephone: (212) 548-2100
Facsimile: (212) 548-2150
pagoldstein@mcguirewoods.com
kgarland@mcguirewoods.com

*Attorneys for Plaintiff Alfred Mack*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

------------------------------------------------------x
ALFRED MACK,                               :
                                           :   Case No.: 6:22-cv-06066
            Plaintiff,                     :
                                           :
                                           :   **COMPLAINT**
      v.                                   :
                                           :
KEITH FIFE, JEFFREY KEMP,                  :
HARRY HETRICK, JR., DENNIS                 :
DERUYTER, and RICKY GRISWOLD,              :
                                           :
            Defendants.                    :
                                           :
                                           :
------------------------------------------------------x

Plaintiff Alfred Mack ("Plaintiff" or "Mack") by his undersigned counsel, McGuireWoods LLP, states as follows for his complaint against Defendants Keith Fife, Jeffrey Kemp, Harry Hetrick, Jr., Dennis DeRuyter, and Ricky Griswold (collectively, "Defendants"):

**INTRODUCTION**

1.   This is a civil rights action brought by Alfred Mack ("Mack" or "Plaintiff"), an incarcerated individual previously sentenced to serve a 12-month sentence for a parole violation. Mack's sentence included an agreement that he could alternatively be restored to parole supervision upon completion of a 90-day treatment program at the Willard Drug Treatment

1

Campus ("Willard"), a drug treatment facility operated by the New York Department of Corrections and Community Supervision ("DOCCS") within the meaning of 7 NYCRR §1.5.

2. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 seeking redress for the deprivation of his rights, privileges, and immunities secured to him under the Eighth and Fourteenth Amendments of the United States Constitution.

3. While confined at Willard, Plaintiff was subjected to deprivations of his rights under the United States Constitution. Specifically, Plaintiff, a then 64-year old man weighing a mere 140 pounds, was brutally beaten by Defendants, drill instructors employed at Willard, for daring to ask for a different slice of pizza while in line at the Mess Hall.

4. Defendants' use of force was disproportionate to any perceived disturbance or threat, excessive, unnecessary, and without provocation or penological justification, resulting in numerous serious and debilitating injuries to Plaintiff, including multiple orbital fractures that interfered with Plaintiff's vision for months.

5. As a result of Defendants' actions, and a subsequent disciplinary hearing conducted by Deputy Superintendent of Security Hetrick, Plaintiff was subjected to confinement in a solitary housing unit ("SHU") at Five Points Correctional Facility ("Five Points"), a maximum-security New York state prison, depriving Plaintiff of his entitlement to conditional release to parole supervision upon completion of Willard's 90-day drug program. Defendants' actions further imposed conditions upon Plaintiff that were atypical for the general population of Willard, and deprived Plaintiff of access to many privileges he enjoyed as a parolee at a minimum-security drug treatment campus.

6. Plaintiff seeks relief for the injuries inflicted on him by Defendants' wanton, malicious, unprovoked, and unjustified assault. Defendants' actions violated Plaintiff's rights

under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks declaratory relief, compensatory, nominal, and punitive damages, an award of costs, attorney's fees, and such other and further relief as the Court deems just and proper.

## THE PARTIES

7. Plaintiff ALFRED MACK, is a citizen of the United States, currently detained at Auburn Correctional Facility located in New York. At the time of the events described herein, Plaintiff was confined at Willard located in Willard, New York.

8. Upon information and belief, Defendant KEITH FIFE ("Defendant FIFE") is a resident of the state of New York. At the time of the events described herein, Defendant Fife was a Drill Instructor at Willard.

9. Upon information and belief, Defendant JEFFREY KEMP ("Defendant KEMP") is a resident of the state of New York. At the time of the events described herein, Defendant Kemp was a Drill Instructor at Willard.

10. Upon information and belief, Defendant RICKY GRISWOLD ("Defendant GRISWOLD") is a resident of the state of New York. At the time of the events described herein, Defendant GRISWOLD was a Drill Instructor at Willard.

11. Upon information and belief, Defendant DENNIS DERUYTER ("Defendant DERUYTER") is a resident of the state of New York. At the time of the events described herein, Defendant DERUYTER was a Drill Instructor at Willard.

12. Upon information and belief, Defendant HARRY HETRICK, JR. ("Defendant HETRICK") is a resident of the state of New York. At the time of the events described herein, Defendant HETRICK was a Deputy Superintendent of Security and Tier III hearing officer at Five Points.

13. On information and belief, at the time of the events described herein, Defendants were employed by and acting under the color of law of the State of New York.

## JURISDICTION AND VENUE

14. This is a civil action authorized by 42 U.S.C. § 1983 for damages and declaratory relief to redress deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff under the Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

15. The court may exercise personal jurisdiction over Defendants because, upon information and belief, Defendants are citizens of New York State.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), as the events giving rise to these claims occurred within the boundaries of the Western District of New York, and upon information and belief, Defendants reside here.

## STATEMENT OF FACTS

**A.  Defendants Use of Excessive Force Against Plaintiff**

17. On February 10, 2019, Plaintiff was a parolee in the custody of the DOCCS at Willard. At that time, Plaintiff was 64-years old, 5 feet and 6 inches in height, and weighed approximately 140 pounds.

18. Willard is a drug treatment facility operated by DOCCS that provides a 90-day program of intensive drug treatment services for certain parole violators.

19. As an alternative to serving his full sentence for a drug-related parole violation, Plaintiff agreed to complete a 90-day treatment program at Willard (the "Program"). Pursuant to a Memo of Agreement and NY Correct. Law § 803, Plaintiff would be entitled to immediate

release from custody and restoration of parole supervision upon successful completion of the Program.

20. From the date he entered the program at Willard until February 9, 2019, Plaintiff completed the Program without issue. During this time, Plaintiff was not subject to any disciplinary action or review.

21. On February 10, 2019, Plaintiff's progress toward completion of the Program was upended when Defendants exercised undue force upon him in response to his request for a slice of pizza.

22. At approximately 11:05 a.m. on February 10, 2019, Plaintiff entered the serving line of Willard's Mess Hall, while Defendant FIFE stood guard nearby.

23. Upon reaching the front of the Mess Hall line, Plaintiff was served a slice of pizza. Plaintiff then asked the Mess Hall server if he may have a larger slice of pizza.

24. In response to Plaintiff's request, Defendant FIFE, without provocation or justification, approached Plaintiff from behind, grabbed the collar of Plaintiff's shirt, and then turned Plaintiff around by the collar, causing Plaintiff's airway to become obstructed.

25. In an act of self-defense, Plaintiff attempted to release himself from the chokehold. By his own admission, Defendant FIFE responded by striking Plaintiff with a closed fist in the area of Plaintiff's left eye. This blow caused Plaintiff to collapse upon a nearby drink stand. Defendant FIFE then forcibly took Plaintiff to the floor and placed him face down in a body hold.

26. Plaintiff's collapse and placement in a body hold did not result in any attempt at de-escalation by Defendant FIFE or other surrounding officers. Instead, Defendant FIFE

assaulted Plaintiff with even greater force, jumping upon Plaintiff, who remained face down on the floor, and repeatedly striking him in the head and torso.

27. Defendant KEMP then joined Defendant FIFE. Defendant KEMP began kicking Plaintiff in the head, causing him to lose consciousness.

28. Other nearby officers, including Defendants DERUYTER and GRISWOLD, witnessed the attack yet took no action to quell or stop the abuse by Defendants FIFE and KEMP, despite having opportunity to intervene.

29. After the assault ceased, Plaintiff was transported to the infirmary.

30. At that time, and as a result of the assault that he just endured, Plaintiff was rendered unconscious and suffered significant swelling and bleeding from his face.

31. Plaintiff was subsequently evaluated by K. Mellini ("Mellini"), a nurse employed in Willard's infirmary. The evaluation resulted in a recommendation that Plaintiff be immediately transported to the emergency department at Cayuga Medical Center due to the severity of his injuries.

32. At Cayuga Medical Center, Plaintiff received a maxillofacial CT scan and was thereafter diagnosed with a blackeye and displaced eyeball, multiple orbital fractures, multiple fractures to the bones surrounding the nose, multiple fractures to the cheekbones, and other fractures of the nasal bones.

33. In the following weeks, Plaintiff experienced ongoing pain and double and blurry vision, as documented in his medical records.

**B.    Plaintiff's Wrongful Confinement in a SHU at Five Points**

34. While Plaintiff underwent medical care for the injuries caused by the assault, Defendant FIFE prepared a misbehavior report (the "Misbehavior Report"), asserting numerous

6

fabricated claims against Plaintiff and charging him with various rule violations under the Standard of Inmate Behavior, including 104.1 (Violent Conduct), 104.13 (Disturbance), 100.11 (Assault on Staff), and 106.10 (Direct Order). These allegations were untrue and were later contradicted by the testimony of several witnesses.

35. Upon information and belief, on that same day, Defendant FIFE also assisted with the preparation of Use of Force and Unusual Incident Reports, in which the events surrounding the assault of Plaintiff were falsely documented.

36. Upon discharge from Cayuga Medical Center, Plaintiff was issued a copy of the Misbehavior Report, promptly transferred to SHU confinement at Five Points pending his Tier III hearing, and had many of his privileges revoked.

37. Five Points is a maximum-security state prison that typically houses inmates for one year or more.

38. Plaintiff did not receive a disciplinary hearing or any other form of process prior to his transfer to SHU confinement at Five Points. Instead, upon issuance of the Misbehavior Report, he was summarily transferred to SHU without further review or inquiry.

39. On February 19, 2019, a Tier III disciplinary hearing was commenced by Defendant HETRICK at Five Points, based upon the allegations in the Misbehavior Report.

40. At the hearing, Plaintiff requested testimony from three fellow Willard detainees that were present at the time of the assault. Pursuant to 7 N.Y.C.R.R. § 254.5, Plaintiff was entitled to call the witnesses to testify at the hearing, in his presence, unless doing so would "jeopardize institutional safety or correctional goals."

41. Plaintiff's request for the three detainees' appearance and real time testimony was denied due to their detention at "another correctional facility," i.e., Willard. In addition, Plaintiff

was not permitted to take his witnesses' testimony by speaker phone because the Willard detainees were "not allowed on phones." Upon information and belief, this was not due to concerns regarding "institutional safety" or any "correctional goals."

42. Plaintiff also requested testimony from Defendant FIFE. Even though Defendant FIFE authored the Misbehavior Report, and carried out the use of force at issue, he refused to personally appear at the hearing.

43. Despite the severity of Plaintiff's injuries, and witness testimony corroborating his account of the incident, on February 27, 2019, Defendant HETRICK rendered a disposition finding Plaintiff guilty of all charges alleged in the Misbehavior Report and imposing a maximum penalty of 60 days SHU confinement.

44. Plaintiff's SHU confinement was subsequently reduced to 45 days.

45. In addition to the SHU sanction, Plaintiff served additional time in prison because he was unjustifiably removed from the Willard program. Were it not for the incident, Plaintiff would have been immediately released from Willard after successful completion of the 90-day program.

46. Had Plaintiff remained in the Willard Program, he would have graduated and been released on or about April, 2019. Due to the malicious assault and his improper, unjustified removal from Willard, Plaintiff remained in prison for an additional 6 months, being released on or around October 30, 2019.

47. Throughout this time, and for a significant and prolonged period, Plaintiff suffered from severe facial pain and blurred vision. Plaintiff also has and continues to experience substantial mental and emotional distress resulting from the assault.

48. On July 2, 2020, Plaintiff exhausted his available administrative remedies after he filed a grievance related to the assault on March 6, 2019 and appealed to the Central Office Review Committee on March 28, 2019.

## LEGAL CLAIMS

### COUNT ONE

**(42 U.S.C. § 1983 and Eighth and Fourteenth Amendments; excessive force)**

49. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

50. As described above, Defendants FIFE and KEMP used excessive force against Plaintiff on February 10, 2019, without provocation or legitimate penological justification, and Defendants GRISWOLD and DERUYTER failed to stop the attack on Plaintiff.

51. Any reasonable officer in the position of Defendants FIFE and KEMP would have known that the force being used against Plaintiff was excessive, unnecessary, and therefore unconstitutional.

52. Any reasonable officer in the position of Defendants GRISWOLD and DERUYTER would have known they had a duty to take reasonable measures to protect Plaintiff from excessive and unnecessary use of force and to prevent harm to Plaintiff, and that their failure to do so would be unconstitutional.

53. In physically assaulting Plaintiff, Defendants KEMP and FIFE sadistically used force, not to maintain or restore discipline or order, but for the sole purpose of causing Plaintiff pain and/or injury, in violation of Plaintiff's right to be free from cruel and unusual punishment under the Eight and Fourteenth Amendments to the Constitution.

54. In observing Defendants KEMP and FIFE'S use of force, and taking no action to prevent it or to protect Plaintiff, Defendants GRISWOLD and DERUYTER failed to take

reasonable steps to intervene and prevent the use of excessive force against Plaintiff, despite having a reasonable opportunity to have done so.

55. Defendant FIFE then attempted to conceal his use of excessive force by submitting false statements in the Misbehavior Report and providing false information in connection with the Unusual Incident and Use of Force Reports.

56. Defendants' actions caused Plaintiff to suffer serious physical injuries, including multiple nasal, facial, and orbital fractures. Defendants further caused Plaintiff to suffer mental and emotional distress.

57. Defendants acted with evil motive or intent, with reckless indifference to Plaintiff's federally protected rights, such that punitive damages are warranted.

## COUNT TWO
**(42 U.S.C. § 1983 and Fourteenth Amendment arising from solitary confinement)**

58. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

59. Plaintiff possessed a protectible liberty interest in maintaining the conditions enjoyed by the general population at Willard, a minimum-security drug treatment facility that primarily houses parolees. That interest arose from: (1) New York's regulations promulgated pursuant to the directives of the New York Correction Law, including 7 NYCRR §§ 301.1, 301.2, which set forth the limited circumstances under which a prisoner may be placed in solitary confinement; and (2) the conditions of SHU confinement at Five Points, a maximum security facility which imposes atypical and significant hardship in comparison to the ordinary incidents of life associated with Willard's general population housing units.

60. Plaintiff was entitled to meaningful process to determine whether solitary confinement for disciplinary reasons was warranted under 7 NYCRR § 301.2. As set forth in the preceding paragraphs, Defendants failed to provide this process to Plaintiff.

61. Any reasonable drill instructor or officer in the positions of Defendants would have known that: (i) Plaintiff had a protectible liberty interest in avoiding the conditions of solitary confinement at Five Points, (ii) Plaintiff was owed adequate process to protect this interest, and (iii) Defendants' failure to provide such process was unconstitutional.

62. Defendants' acts or omissions were and are the legal and proximate cause of Plaintiff's disciplinary SHU confinement.

63. Defendants, individually and collectively, have thereby violated Plaintiff's rights to procedural due process under the Fourteenth Amendment to the U.S. Constitution.

64. Defendants acted with evil motive or intent, with reckless indifference to Plaintiff's federally protected rights, such that punitive damages are warranted.

## COUNT THREE
**(42 U.S.C. § 1983 and Fourteenth Amendment arising from extended confinement)**

65. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

66. Pursuant to NY Correct. Law § 803 and the terms of his sentencing, Plaintiff was entitled to conditional release to parole supervision upon the successful completion of the 90-day drug treatment program at Willard. This entitlement constituted a protectible liberty interest under the Fourteenth Amendment.

67. Plaintiff's immediate transfer to 45-day SHU confinement deprived him of the opportunity to be restored to parole supervision upon successful completion of the Program.

68. Plaintiff was entitled to meaningful process to determine whether the opportunity to complete the Program, and to receive conditional release to parole supervision based upon that completion, should be revoked. As set forth in the preceding paragraphs, Defendants failed to provide this process to Plaintiff by immediately removing him from the program before any type of hearing had occurred.

69. Any reasonable officer in the positions of Defendants would have known that: (i) Plaintiff had a protectible liberty interest in being restored to parole supervision upon successful completion of the Program, (ii) Plaintiff was owed adequate process to protect this interest, and (iii) Defendants' failure to provide such process was unconstitutional.

70. Defendants' conduct in depriving Plaintiff of his entitlement to conditional release was egregious and shocking to the conscience.

71. Defendants' acts or omissions were and are the legal and proximate cause of Plaintiff's extended confinement.

72. Defendants, individually and collectively, have thereby violated Plaintiff's rights to procedural and substantive due process under the Fourteenth Amendment to the U.S. Constitution.

73. Defendants acted with evil motive or intent, with reckless indifference to Plaintiff's federally protected rights, such that punitive damages are warranted.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

a. Declare Defendants' acts and omissions alleged herein to be in violation of Plaintiff's rights under the United States Constitution and laws of the United States;

b. Enter judgment in favor of Plaintiff awarding actual and compensatory damages, including consequential damages, against Defendants, jointly and severally, to compensate Plaintiff for his pain suffering, and other hardships arising from the assault upon Plaintiff as alleged herein;

c. Enter judgment in favor of Plaintiff awarding nominal damages, against Defendants, jointly and severally, to compensate Plaintiff for his pain suffering, and other hardships arising from the assault upon Plaintiff as alleged herein;

d. Enter judgment in favor of Plaintiff awarding punitive damages, against Defendants, jointly and severally, to compensate Plaintiff for his pain suffering, and other hardships arising from the assault upon Plaintiff as alleged herein;

e. Award Plaintiff the costs of this action, including reasonable attorneys' fees and costs; and

f. Granting such other and further relief that the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: February 8, 2022
New York, New York

*s/ Philip A. Goldstein*
Philip A. Goldstein, Esq.
Katherine Garland (*pro hac vice application forthcoming*)
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Telephone: (212) 548-2100
Facsimile: (212) 548-2150
pagoldstein@mcguirewoods.com
kgarland@mcguirewoods.com

*Attorneys for Plaintiff Alfred Mack*